March 20, 2025

**VIA ECF**

The Honorable Gregory H. Woods
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *Curran-Groome, et al. v. Columbia University*, No. 25 Civ. 01606 (GHW)

Dear Judge Woods:

    In accordance with the Court's Order of February 28, 2025, ECF 7, the parties in the above-captioned action respectfully submit this joint letter in advance of the telephonic conference scheduled for March 27, 2025.

**1. Nature of the Case and Principal Defenses**

    a. **Nature of the Case**

    *i.*    ***Plaintiffs.***  Plaintiffs are frankly unused to a joint status letter briefed like a letter motion to dismiss, complete with case law citations. It was our understanding that a status letter is primarily for case management. We wrote to Defendants' counsel expressing that concern. Since they seem determined to proceed anyway, Plaintiffs will summarize their positions briefly.

    This is a uniquely dangerous historical moment for the rule of law. At the very outset, after October 7, 2023, Columbia was targeted by the House Committee on Education and the Workforce, billionaire donors, the right wing media, and its own trustees and certain faculty, pressuring it to marginalize, silence and punish students and faculty criticizing Israel or opposing genocide in Palestine. The students and faculty targeted in this effort are Palestinian, Arab, and Muslim, and their supporters. The Trump administration has now joined the crusade against Columbia, withholding $400 million and demanding that Columbia end all remaining process protecting accused students. and replace it with summary suspensions and expulsions decided unilaterally by administration. The government is also demanding reform of Columbia's admission process. Given the government's frenzy to eliminate DEI everywhere, there can be little doubt that the goal is a university without the protected classes represented by Plaintiffs.

    Columbia owed a duty to plaintiffs both under contract law (Tedeschi) and Title VI to protect them against this bigoted, destructive intervention. Instead, Columbia has voluntarily complied and in doing so, created a hostile environment for these students. Plaintiffs have been doxed, threatened, and physically attacked by Columbia's faculty and students, while Columbia stood by and declined to intervene. Private investigators working for Columbia have pounded late at night on Plaintiff's dorm and apartment doors, and when Plaintiffs exercised their right to decline to open the door and answer questions, Columbia administration threatened to, and then did, summarily suspend them for their failure to answer. Every subsequent disciplinary sanction stands

on a prior illegal one. Plaintiffs have been subjected to a new disciplinary committee, CSSI, designed to shortcut and deny the procedural rights guaranteed in the long-standing faculty-supervised panel, UJB (which the President is now demanding be canceled entirely). Attorneys can attend UJB proceedings, which are judged by a panel of faculty and students; CSSI forbids attorneys and the student is judged by a single bureacrat. The files of these proceedings, confidential under FERPA, have been demanded and, on information and belief, supplied to Congress, which is on its own fanatical and bigoted campaign to drive all people of color out of universities.

Columbia has allowed its administration, rules, culture, and student conduct and Title VI offices to be weaponized against the protected classes represented by Plaintiffs. Intervention by this Court is the only remaining way to redress these harms.

*ii.* ***Defendant.*** Like many universities across the country, Columbia University ("Columbia" or the "University") experienced a surge in campus conflict following the October 7, 2023 terrorist attacks against Israel. This case concerns several of the most disruptive campus events that occurred over the past 17 months, including: "Resistance 101," ¶¶ 80-91,[1] an event featuring speakers who have supported terrorism and promoted violence; the first "Gaza Solidarity Encampment," ¶¶ 118-120, an unauthorized encampment on Columbia's campus that took place April 17-18, 2024, and required New York City Police Department ("NYPD") assistance to disperse; the second "Gaza Solidarity Encampment," ¶¶ 142-146, that took place April 18-30, 2024—during which several students formed a "human chain," ¶¶ 144-146, to exclude other students from the encampment—and which also required NYPD assistance to disperse; and the April 30, 2024 occupation of Hamilton Hall, ¶¶ 151-152, where a group of individuals broke into a University building carrying ropes, chains, and zip ties, broke down doors and windows, barricaded themselves and University staff inside, destroyed University property, and confronted and intimidated Columbia employees working in the building, which again required NYPD assistance to disperse.

Plaintiffs are three Columbia graduate students who, by their own accounts, repeatedly violated University rules by taking part in in some or all of these events:

*Curran-Groome.* Curran-Groome helped organize Resistance 101 and refused to cooperate with the University's investigation concerning that event. ¶¶ 81, 88, 102-104, 107. As a result, Columbia suspended her on an interim basis, and subsequently placed her on conditional disciplinary probation for one year. ¶ 115. Two weeks after Columbia imposed the interim suspension for Resistance 101, Curran-Groome participated in the first encampment, in violation of both University policy and her interim suspension. ¶¶ 118, 120, 126. A few days later, Curran-Groome took part in the second encampment, again in violation of both University policy and her interim suspension. ¶¶ 142, 148-149. Columbia imposed an additional year of disciplinary probation after determining that she violated the University's non-discrimination policy in connection with the human chain incident at the second encampment. ¶ 148. One week after the human chain incident, Curran-Groome participated in the unlawful occupation of Hamilton Hall. ¶¶ 151-152, 154. Columbia immediately suspended her on an interim basis, ¶ 158, and

---

[1] Citations to "¶ _" refer to paragraphs of the Complaint, ECF 1-1.

subsequently suspended her for two years due to repeated violations of her interim suspension, ¶ 180.

*Parisi.* Parisi also took part in Resistance 101 and refused to cooperate with the University's investigation. As a result, Columbia also suspended him on an interim basis, and subsequently placed him on conditional disciplinary probation for one year. ¶¶ 95, 98, 102-104, 107, 115. Parisi also took part in the second encampment and the "human chain" incident, in violation of both University policy and his interim suspension. Columbia imposed an additional year of disciplinary probation after determining that Parisi violated the University's non-discrimination policy. ¶¶ 142, 148-149. One week after the human chain incident, Parisi participated in the unlawful occupation of Hamilton Hall. ¶¶ 151-152, 158. Columbia immediately suspended him on an interim basis, ¶ 158, and subsequently suspended him for one year due to repeated violations of his interim suspension, ¶ 180.

*Murphy.* Murphy took part in the first encampment, for which Columbia suspended him on an interim basis. ¶ 123. One week later, Murphy participated in the unlawful occupation of Hamilton Hall. ¶¶ 151-152, 158, 167. Columbia immediately suspended him on an interim basis, ¶ 158, and subsequently suspended him for one year for violating his interim suspension, ¶ 185.

Plaintiffs assert that by disciplining them, Columbia discriminated against them on the basis of their affiliation with Palestinian students and people and, in the case of Curran-Groome, on the basis of her race and national origin. In addition, Curran-Groome and Parisi assert that Columbia discriminated against them by allegedly failing to protect them from a "foul-smelling liquid" sprayed by two individuals at a protest, ¶¶ 64, 67, or, in the case of Parisi, from three social media posts made by a Columbia professor in April 2024, ¶¶ 204-208.

### b. Principal Claims and Defenses

Plaintiffs assert ten causes of action against Columbia: (1) violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"); (2) violation of New York Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, *et seq.*; (3) violation of New York City Administrative Code ("NYCHRL"), N.Y.C. Admin. Code § 8-107(4); (4) violation of New York Landlord-Tenant Law, N.Y. Real Prop. Law §§ 215, 228, 232-A; (5) violation of "*Tedeschi* Rights"; (6) breach of contract; (7) negligence; (8) intentional infliction of emotional distress; (9) negligent infliction of emotional distress; and (10) declaratory judgment. As described more fully in Section 3.b below, Columbia contends that Plaintiffs fail to state any of their claims.

### c. Major Legal and Factual Issues

The major legal and factual issues are whether: (1) Columbia's disciplinary proceedings against Plaintiffs were motivated by discriminatory bias; (2) Columbia was deliberately indifferent to severe, pervasive, and objectively offensive discriminatory harassment of Plaintiffs of which Columbia had actual knowledge; (3) Murphy's and Parisi's assertions that they are affiliated with Palestinian students and people are sufficient to establish that they are members of a protected class; (4) there exists a cause of action for "*Tedeschi* Rights"; (5) the landlord-tenant statutes specified in the Complaint apply to Plaintiffs' housing arrangements with Columbia; (6) Plaintiffs identify any enforceable contract terms breached by Columbia; (7) Plaintiffs' injuries were

foreseeably caused by the breach of a duty of care they were owed by Columbia; and (8) Columbia's conduct was sufficiently extreme and outrageous to support Plaintiffs' intentional and negligent infliction of emotional distress claims.

2. **Basis for Subject Matter Jurisdiction and Venue**

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' first cause of action, which alleges violations of Title VI, arises under federal law. This Court may exercise supplemental jurisdiction over the other non-federal causes of action pursuant to 28 U.S.C. § 1367(a) because they derive from a common nucleus of operative facts with Plaintiffs' Title VI claim. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, according to Plaintiffs' Complaint, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

3. **Contemplated and/or Pending Motions**

At the time of this submission, there are no pending motions, and the parties do not intend to make any other applications at the status conference.

   a. *Plaintiffs.* Plaintiffs wish to amend their complaint as of right to reflect recent events such as President Trump's interventions with Columbia, the withholding of funds to extort Columbia into collaborating in more deprivations of Plaintiffs' rights, the House Committeer's latest lketter demanding more of Plaintiffs' confidential files, and ICE's arrests with Columbia's apparent complicity of three students including Mahmoud Khalil. We have suggested that the parties to a 45 day deadline for amending, and that a briefing schedule following that filing for a motion to dismiss.

   b. *Defendant.* Columbia intends to file a motion to dismiss the Complaint in its entirety under Rule 12(b)(6) and will be filing a pre-motion letter pursuant to Rule 2.E of Your Honor's Individual Rules of Practice in Civil Cases. In brief, Columbia intends to move to dismiss Plaintiffs' claims on the following grounds:

   *Title VI, NYSHRL, and NYCHRL.* Plaintiffs fail to allege sufficient facts giving rise to a plausible inference of discriminatory intent in connection with their University disciplinary proceedings. *See, e.g., Cooper v. Franklin Templeton Invs.*, No. 22-2763, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023); *Elliott v. City of N.Y.*, 723 F. Supp. 3d 249, 268 (S.D.N.Y. 2024). To the extent Plaintiffs' claims are premised on a "hostile environment" theory, Plaintiffs fail to plead that Columbia was deliberately indifferent to any discriminatory harassment. *See, e.g., Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999); *Minto v. Molloy Univ.*, 715 F. Supp. 3d 422, 431 (E.D.N.Y. 2024). With respect to the NYCHRL claim, Plaintiffs fail to plead that they were treated less well than other students because of any protected characteristic. *See, e.g., Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 404 (S.D.N.Y. 2017).

   *Tedeschi rights.* Plaintiffs fail to state a cause of action for "*Tedeschi* Rights" because no such cause of action exists. The *Tedeschi* court did not create a freestanding cause of action. *Tedeschi v. Wagner College*, 49 N.Y.2d 652, 660 (1980). Rather, *Tedeschi*'s requirement of substantial compliance with university policies is relevant to special proceedings under Article 78 of the state Civil Practice Laws and Rules. *Id.* Numerous courts (including the *Tedeschi* court

itself) have rejected damages claims premised on *Tedeschi*'s requirements. *See id.* at 661-62; *Mason v. Cent. Suffolk Hosp.*, 3 N.Y.3d 343, 349 (2004).

*Landlord-tenant law.* Plaintiffs' claimed violations of landlord-tenant law fail because the statutes identified by Plaintiffs are inapplicable. The "good cause" eviction requirement in New York Real Property Law § 215 does not apply to a "dormitory owned and operated by an institution of higher education." N.Y. Real Prop. Law § 214(13). New York Real Property Law § 232-A applies only to a "monthly tenant" or a "month to month" tenant, but the Complaint alleges Curran-Groome and Parisi had one-year leases. ¶ 52. And New York Real Property Law § 228 is relevant only to tenancies "at will or by sufferance"—Plaintiffs' leases were neither.

*Breach of contract.* Plaintiffs' breach of contract claim fails because it is premised primarily on "general statements of policy" that do not create legal obligations in the university context. *See, e.g.*, *Novio v. New York Acad. of Art*, 317 F. Supp. 3d 803, 811 (S.D.N.Y. 2018) (cleaned up). Even if Plaintiffs had identified any legally enforceable contractual obligations, they fail to allege that Columbia breached its obligations. *See Jones v. Trs. of Union Coll.*, 92 A.D.3d 997, 999 (3d Dep't 2012) (contract claim in disciplinary context requires University to have acted arbitrarily or failed to substantially comply with its own rules).

*Negligence.* As an initial matter, New York does not recognize a cause of action for negligent prosecution or investigation in the university disciplinary context. *See, e.g.*, *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 484 (S.D.N.Y. 2015). Furthermore, Columbia cannot be held legally responsible for the (unforeseeable) actions of Plaintiffs' fellow students, *see, e.g.*, *Pasquaretto v. Long Island Univ.*, 106 A.D.3d 794, 795 (2d Dep't 2013), or of a professor acting outside of his professional duties, *see, e.g.*, *Purdy v. Pub. Adm'r of Westchester Cnty.*, 72 N.Y.2d 1, 8 (1988). And plainly, Columbia had no duty to refrain from calling law enforcement to end the unlawful occupation of Hamilton Hall.

*Emotional distress.* Plaintiffs' intentional and negligent infliction of emotional distress claims fail because they are unsupported by allegations of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Dillon v. City of New York*, 261 A.D.2d 34, 41 (1st Dep't 1999) (cleaned up).

*Declaratory judgment.* Plaintiffs' request for a declaratory judgment should be dismissed because it "asserts no new claims and merely reiterates the same allegations" made elsewhere in the Complaint. *Chalas v. Pork King Good*, 673 F. Supp. 3d 339, 345 (S.D.N.Y. 2023).

In the event that the Court were to deny Columbia's motion to dismiss, Columbia may file discovery motion(s) and motion(s) for summary judgment at the appropriate time.

**4. Discovery That Has Taken Place and That Is Likely to Be Admissible**

The parties have not yet engaged in any discovery. The parties contemplate that fact discovery will focus on Plaintiffs' disciplinary proceedings.

**5. Computation of Each Category of Damages Claimed**

6

      We are unable to calculate exact damages at this time, and the damag is in fact continuing. Suspension and expulsion of Plaintiffs are in most cases likely to be career-ending moves, preventing them from completing their education and making the income commensurate with those degrees. Columbia has also inflicted great anxiety and suffering and a belief they are unwelcome and physically unsafe on campus.

**6. Status of Settlement Discussions**

      There are no current settlement discussions.

**7. Other Information**

      Plaintiffs intend to amend their complaint. The parties respectfully request that Columbia's deadline to respond to the amended complaint be 45 days after Plaintiffs' amended complaint is filed.

      The proposed schedule reflected in the CMP jointly submitted by the parties reflects that the review and production of documents in this case will likely be more time-consuming than usual due to the need to ensure compliance with the Family Educational Rights and Privacy Act.

      Respectfully submitted,

| | |
|---|---|
| /s/ Jonathan Wallace | /s/ Gabrielle E. Tenzer |
| Jonathan Wallace | Gabrielle E. Tenzer |
| P.O. Box #728 | HECKER FINK LLP |
| Amagansett, N.Y. 11930 | 350 Fifth Avenue, 63rd Floor |
| (917) 359-6234 | New York, NY 10118 |
| jonathan.wallace80@gmail.com | (212) 763-0883 |
| | gtenzer@heckerfink.com |
| | |
| *Attorney for Plaintiffs Catherine Curran-Groome, Brandon Murphy, and Aidan Parisi* | *Attorney for Defendant Trustees of Columbia University in the City of New York* |